## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARTHA A. MAES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-05-156-R |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>O R D E R</u>

This matter is before the Court for review of the Findings and Recommendation entered by United States Magistrate Judge Shon T. Erwin, finding that the decision of the Administrative Law Judge was supported by substantial evidence, and recommending that the decision be affirmed. The Court conducts a *de novo* review of those findings and conclusions to which the Plaintiff objects.

The Plaintiff, Martha A. Maes, filed an application for disability insurance benefits on February 4, 2002, alleging that she had been disabled since January 8, 2000. The application was denied upon initial consideration, and upon reconsideration at the administrative level. At the Plaintiff's request, a *de novo* hearing was held before an administrative law judge.

In reviewing the Plaintiff's application for disability benefits, the Administrative Law Judge applied the five-step sequential evaluation process established in 20 C. F. R. § 404.1520. At step one, the Administrative Law Judge found that the Plaintiff had not engaged in substantial gainful activity since the date of onset of her alleged disability. At step two, the Administrative Law Judge concluded that the Plaintiff has the severe impairments of seizure disorder and affective disorder. At step three, the Administrative Law Judge found that the Plaintiff's impairments or combination of impairments do not meet or equal any impairment listed in 20 C. F. R. Part 404, Subpart P,

Appendix 1.  At step four, the Administrative Law Judge found that the Plaintiff retained the residual functional capacity to perform her past relevant work as a cashier and a general clerk, and therefore concluded that the Plaintiff was not disabled within the meaning of the Social Security Act, and was not entitled to disability insurance benefits.[1]

In January 2000, the Plaintiff was examined by J. Mike Banowetz, M.D., a neurologist, who found that the Plaintiff had a normal gait, that she could walk on her heels and toes and perform tandem gait well, that her muscle strength and tone were normal in the arms and legs, and that she could perform fine motor tasks without difficulty.  Dr. Banowetz also found that the Plaintiff's facial sensation and movements were normal, that her sensory examination was normal, and that deep tendon reflexes were normal at the biceps, triceps, knee jerks and ankle jerks.  After the Plaintiff underwent an MRI of the head, Dr. Banowetz found no abnormalities which would explain her seizures.  Dr. Banowetz also reported that the Plaintiff had an abnormal EEG, which was consistent with seizure disorder, but not necessarily diagnostic of the same.  Dr. Banowetz prescribed Dilantin to control the Plaintiff's seizures.   In August 2001, the Plaintiff was examined by James Shackelford, M.D., who found that she had some difficulty expressing herself clearly, that her logic and reasoning were essentially intact, that her mood was depressed and that her affect was somewhat blunted but appropriate.  Dr. Shackelford found that the Plaintiff's psychomotor activity was probably within normal limits, and that she was probably functioning within the normal range of

---

[1]At the fifth and last step of the sequential process established at 20 C.F.R. § 404.1520, the Social Security Administration considers its assessment of the claimant's residual functional capacity, age, education, and work experience to determine whether the claimant can make an adjustment to other work. If the claimant cannot make an adjustment to other work, the claimant will be found to be disabled.  See 20 C.F.R. § 404.1520 (g) and § 404.1560(c). Because the Administrative Law Judge found, at step four, that the Plaintiff retained the residual functional capacity to perform her past relevant work, he did not reach step five.

intelligence.  Dr. Shackelford diagnosed the Plaintiff with major depression and assessed her as having a present GAF of 50 and a past GAF of "probably" 55.[2]

In October 2003, the Plaintiff underwent a consultative examination by psychologist Richard H. Swink, Ph. D., who reported that the Plaintiff had "mild word forming problems at times," that she was alert, coherent and able to focus her attention, and that she had average intellectual ability with no intellectual defecits.  Dr. Swink further noted that the Plaintiff had a mild problem with delayed recall and a mild problem with verbal associative learning.  Dr. Swink found that the Plaintiff functioned within normal limits in her ability to immediately recall structured verbal information and in her ability to retain the same information after a 30-minute delay.  Dr. Swink's diagnostic impression was of adjustment disorder with depressed mood, mild secondary to chronic physical condition, and amnestic disorder NOS, mild.  Dr. Swink concluded that the Plaintiff's status was relatively stable and likely to continue at a similar level for the next 12 months.  Dr. Swink found that the Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, and in her ability to respond appropriately to work pressures, although she was still able to function satisfactorily.

The Plaintiff has argued in this proceeding that the Administrative Law Judge failed to properly develop the record with regard to her obesity, thyroid condition and mental impairment by

---

[2]As the Magistrate Judge explained, a "GAF" or Global Assessment of Functioning represents Axis V of the Multiaxial Assessment System.  A GAF score is a subjective determination which represents the clinician's judgment of the individual's overall level of functioning. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th Ed. 1994), p. 30.  The GAF score is taken from the GAF scale which is to be rated with respect only to psychological social, and occupational functioning. *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id. at* 32.  The GAF scale defines the range from 51 - 60 as follows: Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with co-workers).  The GAF scale defines the range from 41 - 50 as follows: Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

failing to obtain the records of Dr. Kimball and Dr. Blalock.  Although a claimant has the general duty to prove disability, a social security disability hearing is a non-adversarial proceeding and an administrative law judge has an obligation to develop the factual record.  *Musgrave v. Sullivan,* 996 F. 2d 1371, 1374 (10th Cir. 1992).  As explained in the Report and Recommendation, the administrative law judge has a basic duty of inquiry to fairly and fully develop the record as to material issues. *Baca v. Department of Health & Human Services,* 5 F. 3d 476 (10th Cir. 1993).  The administrative law judge must "make every reasonable effort" to obtain from the claimant's treating physician all medical evidence, including diagnostic tests, necessary in order to make a disability determination, prior to evaluating medical evidence obtained from any consultative physician.  Title 42 U. S. C. § 423 (d) (5) (B).

The Plaintiff contends that the Administrative Law Judge failed to make any effort at all to obtain her medical records from Doctors Kimball and Blalock.  The Plaintiff argues, in essence, that the Administrative Law Judge failed to inquire as to who her treating physicians were prior to the date she was last insured.  An administrative law judge has a basic obligation in every social security disability case to ensure that an adequate record is developed during the disability hearing, consistent with the issues raised by the claimant.  *Henrie v. Department of Health and Human Services,* 13 F. 3d 359, 360 - 361 (10th Cir. 1999); *Musgrave v. Sullivan,* 966 F. 2d 1371, 1374 (10th Cir. 1992).  This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented.  *Henrie, supra; Thompson v. Sullivan,* 987 F. 2d 1482 (10th Cir. 1993).  The duty is one of inquiry, ensuring that the administrative law judge is informed about the facts relevant to his decision, and  about the claimant's own version of those facts.  *Henrie, supra; Dixon v. Heckler,* 811 F.2d 506, 510 (10th Cir. 1987).  Where the claimant is represented by counsel, the

administrative law judge is ordinarily entitled to rely upon counsel to ensure that the claimant's case is structured and presented in a way that the claimant's claims are adequately explored. *Hawkins v. Chater,* 113 F. 3d 1162 (10th Cir. 1997); *Glass v. Shalala,* 43 F. 3d 1392, 1394 - 1396 (10th Cir. 1994) (refusing to remand for further development of the record where the ALJ had carefully explored the applicant's claims, and where claimant's counsel failed to specify the additional information sought). The administrative law judge does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. *Glass, supra.* Generally, this means that the administrative law judge has the duty to obtain pertinent, available medical records which come to his attention during the course of the hearing. *Carter v. Chater,* 73 F. 3d 1019, 1022 (10th Cir. 1996). The standard is one of reasonable good judgment, and the administrative law judge's duty to develop the record is limited to developing the record as to material issues. *Hawkins v. Chater,* 113 F. 3d 1162, 1168 (10th Cir. 1997); *Baca v. Department of Health and Human Services,* 5 F.3d 476, 479-80 (10th Cir. 1993).

It is undisputed that the Plaintiff failed to identify Dr. Kimball and Dr. Blalock as treating physicians in her submissions to the agency. Even after being notified of her opportunity to provide additional medical evidence, the Plaintiff and her counsel still failed to submit records from either Dr. Kimball or Dr. Blalock. At the administrative hearing, the Plaintiff's attorney announced that he believed that all pertinent exhibits were in the claim folder, and that all existing evidence was before the administrative law judge. Plaintiff's counsel then advised the administrative law judge by letter on December 19, 2003 that he had no objection to the consultative examination performed by Dr. Swink, and that he considered the case "fully submitted and ready for your decision." Furthermore, although the Plaintiff alleges that both Dr. Kimball and Dr. Blalock treated her prior

to the last date she was insured, she has not shown that their records contained information which may have led to a different outcome, or which was otherwise material to her disability claim. Accordingly, the Court agrees with the Magistrate Judge that the Administrative Law Judge fulfilled his duty to ensure that an adequate record was developed during the claimant's disability hearing. *Henrie v. United States Department of Health & Human Services,* 13 F. 3d 359, 360 - 361 (10th Cir. 1993).

The Plaintiff next argues that the Administrative Law Judge improperly failed to consider her thyroid condition, or whether her "seizure type activity and mentation problems" could be attributed to her thyroid condition. Consultative physician Arthur A. Schmidt, M. D., testified that the Plaintiff's thyrotoxicosis "was taken care of" by regular doses of synthetic thyroid following the chemical removal of her thyroid. Dr. Schmidt testified that it appeared to him that he found no documentation of the Plaintiff having any particular problems with her thyroid after she was placed on thyroid medication. The Court agrees with the Magistrate Judge that there is no medical evidence in the record which suggests that the Plaintiff's thyroid condition was a severe impairment during the relevant period.

The Plaintiff next objects to the Magistrate Judge's conclusion "that the [Administrative Law Judge] was free to disregard [her] mental impairment because there was supposedly no mental health treatment prior to the date last insured." The Plaintiff alleges that, contrary to the findings of the Administrative Law Judge and Magistrate Judge, she was treated for mental health issues prior to her last date insured, March 31, 2001. The Plaintiff cites a neurologist's report dated January 25, 2000, and counseling notes from a psychologist dated July 19, 2000. (Administrative Record at pp. 120 - 121; 260 - 265). However, even if the Plaintiff was treated for a mental impairment prior to

the last date of her insured status, the Administrative Law Judge correctly observed that an impartial medical expert, Dr. Arthur A. Schmidt, testified that based upon his review of the evidence, the Plaintiff did not have an impairment of a severity to meet or equal any listed impairment.

<u>Conclusion</u>.

The Court, having conducted a de novo review of the administrative record and the pleadings and briefs in this case, finds that the Commissioner's decision to deny disability benefits is supported by substantial evidence. The Plaintiff's Objection to the Magistrate Judge's Findings and Recommendation is hereby OVERRULED. The Magistrate Judge's Findings and Recommendation are hereby ADOPTED. The decision of the Commissioner to deny disability benefits is hereby AFFIRMED.

**IT IS SO ORDERED this 21st day of July, 2006.**

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE